UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JAMES R. HAZELWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:22-174-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| H. KEENE, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Plaintiff James R. Hazelwood is a resident of Lebanon, Kentucky.  Proceeding without an attorney, Hazelwood has filed a civil complaint pursuant to 42 U.S.C. § 1983 against Defendants Lebanon City Police Sergeant Henry Keene, United States Marshal Deputy Parker, and United States Magistrate Judge John Doe.  [R. 1.]  By prior Order, the Court granted Hazelwood's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  [R. 6.]  Thus, the Court must conduct a preliminary review of Hazelwood's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A.

Upon initial screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is obviously immune from such relief.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).  A complaint must set forth claims in a clear and concise manner and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010); *see also* Fed. R. Civ. P. 8.  In addition, "a plaintiff's obligation to provide the 'grounds' of

his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007).

The Court evaluates Hazelwood's complaint under a more lenient standard because he is

not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321

F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations

as true, and his legal claims are liberally construed in his favor. *Twombly*, 550 U.S. at 555-56.

However, the Court "need not accept as true legal conclusions or unwarranted factual

inferences." *Moderwell v. Cuyahoga Co., Ohio*, 997 F.3d 653, 659 (6th Cir. 2021) (quotations

omitted).

Hazelwood's complaint relates to his November 18, 2020, arrest pursuant to a federal

warrant issued regarding Hazelwood's suspected violation of the terms of his federal supervised

release, as well as the timing of a detention hearing regarding the terms of release conditions for

Hazelwood. By way of background, pursuant to a plea agreement with the United States, in

September 2003, Hazelwood pled guilty in the United States District Court for the Eastern

District of Kentucky to one count of Bank Robbery by Force or Violence (Count 1) and one

count of use of a firearm to commit a violent felony (Count 2). *United States v. Hazelwood*,

5:02-cr-143-KKC-MAS (E.D. Ky. 2003).[1] Hazelwood was originally sentenced to a term of

imprisonment of 120 months on Count 1 and 84 months on Count 2, to be served consecutively,

for a total term of imprisonment of 204 months, to be followed by a 5-year term of supervised

---

[1] A court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969). *See also United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

release.  *Id*. at R. 54.  In April 2005, Hazelwood's sentence was amended to a term of imprisonment of 100 months on Count 1 and 84 months on Count 2, to be served consecutively, for a total term of imprisonment of 184 months, to be followed by a 5-year term of supervised release.  *Id*. at R. 77.

Hazelwood was released from the custody of the Bureau of Prisons ("BOP") and began serving his 5-year term of supervised release on February 27, 2020.  *Id*. at R. 132 (Order/Report). On November 3, 2020, U.S. Probation Officer Joey D. Tyler filed a Report on Offender Under Supervision stating that, after a urine specimen submitted by Hazelwood on October 30, 2020, returned positive for THC, Hazelwood admitted to smoking marijuana on October 24, 2020.  *Id*. At that time, Officer Tyler stated that Hazelwood "expressed remorse" and the Officer believed it to be an isolated incident, thus he requested no further action.  *Id*.

However, on November 17, 2020, Hazelwood again produced a urine specimen that tested positive for the presence of marijuana.  [R. 8 at 2.]  On November 18, 2020, Officer Tyler filed a Petition for Warrant or Summons for Offender Under Supervision stating that he believed that Hazelwood had violated his supervision by using a controlled substance (marijuana) and committing a crime (violations 1 and 2, respectively).  *United States v. Hazelwood*, 5:02-cr-143-KKC-MAS (E.D. Ky. 2003) at R. 134.  In the Petition, Officer Tyler requested that a warrant be issued and Hazelwood's term of supervision be revoked.  *Id*.  Thus, on November 18, 2020, United States District Court Judge Karen K. Caldwell granted the request for a warrant and ordered that a warrant be issued and the matter sealed pending Hazelwood's arrest.  *Id*. at R. 134, 135.

According to Hazelwood, on November 18, 2020, the Lebanon Police Department received a notification via "Inquiry Hit Notification" from the United States Marshals Service

Headquarters in Arlington, Virginia, that the probation violation warrant had been issued for Hazelwood's arrest. [R. 1 at 4.] Hazelwood alleges that this notification was issued by Defendant Deputy Parker (a U.S. Marshal). According to Hazelwood, Deputy Parker further advised that, "due to the 'offices being closed' a warrant would be issued on November 19, 2020, for [Hazelwood's] arrest and instructed the City of Lebanon to arrest [Hazelwood] minus the arrest warrant." *Id*.

Hazelwood claims that he was then arrested and detained "without a warrant" on November 18, 2020, by Defendant Sergeant Henry Keene with the Lebanon Police Department. *Id*. He further claims that "to support the arrest, Officer Keene fabricated a "'Fugitive from Another State,' Warrant Required 'Uniform Citation.'" *Id*. at 5. He alleges that Deputy Parker then forwarded the warrant on November 19, the day after the arrest. *Id*. Thus, Hazelwood theorizes that his November 18 arrest was "warrantless" because a copy of the warrant issued on November 18 was not forwarded to the Lebanon Police Department until November 19.

On December 3, 2020, Hazelwood (represented by counsel) appeared via videoconference (per his consent) before United States Magistrate Judge Matthew A. Stinnett for his initial appearance on his revocation proceedings. *United States v. Hazelwood*, 5:02-cr-143-KKC-MAS (E.D. Ky. 2003) at R. 137 (Minute Entry). At his initial appearance, Hazelwood waived his right to a preliminary hearing. *Id*. Judge Stinnett found that there was probable cause to believe that Hazelwood violated the terms and conditions of his supervised release and set the matter for a final hearing in front of Judge Caldwell on December 10, 2020. *Id*.

Also at the hearing, Judge Stinnett also advised the parties of a criminal complaint and arrest warrant pending against Hazelwood in Jessamine County, Kentucky.[2] The United States

---

[2] According to a Status Report later filed by Hazelwood's counsel, Hazelwood was charged with two additional supervised release violations (violations 3 and 4) in a supervised release violation report

requested that Hazelwood be detained pending a final hearing.  However, Hazelwood contested

that he had only received a criminal summons as opposed to an arrest warrant and requested

deferral of the detention issue pending resolution of the state charges.  *Id*.  The Court noted that,

due to the pending arrest warrant served on Hazelwood, the release decision was moot until the

arrest warrant was resolved.  *Id*.  The Court then remanded Hazelwood to the custody of the U.S.

Marshal Service, but noted that, if Defendant's characterization of the status of his pending state

charges was correct, it would promptly schedule a detention hearing.  *Id*.

　　　After his initial appearance, Hazelwood's counsel filed a Motion for Hearing indicating

that he had investigated the Jessamine County case and requested that the Court convene a bond

hearing to consider release conditions for Hazelwood.  *Id*. at R. 136 (Motion).  Hazelwood's

motion for a bond hearing was granted and the detention hearing was scheduled for December 4,

2020.  *Id*. at R. 138 (Order).

　　　On December 4, 2020, Hazelwood again appeared in front of Judge Stinnett (via

videoconference) for an initial appearance on the revocation proceedings related to violations 3

and 4 and a detention hearing.  The Court rescheduled the final hearing as to violations 1 and 2

for December 8, 2020; scheduled a preliminary hearing as to violations 3 and 4 for December 17,

2020; and ordered that Defendant be released from custody and bound by the terms of his

supervised release and additional conditions. *Id*. at R. 139 (Minute Entry).

　　　At the December 8, 2020, final hearing on violations 1 and 2, Hazelwood stipulated as to

these violations, thus Judge Caldwell found that Hazelwood violated the terms of his supervised

release as to violations 1 and 2.  *Id*. at R. 141 (Order).  However, Judge Caldwell deferred final

---

addendum dated December 3, 2020, both of which related to the then-pending theft charge in Jessamine
Circuit Court case 21-CR-156.  *Id*. at R. 147 (Status Report).

ruling on the matter until the other charges (violations 3 and 4, related to his then-pending theft charge in Jessamine Circuit Court) were resolved. *Id.*[3]

In his Complaint, Hazelwood alleges that, once he was in federal custody, the United States Magistrate Judge John Doe in Lexington, Kentucky, "failed to have [Hazelwood's] criminal offence put before the Court for a detention hearing well outside the time frame clearly set by precedent Supreme Court laws." [R. 1 at 4.] Specifically, Hazelwood alleges that, "[o]nce the 'warrant' was issued or filed with the United States District Court, [Hazelwood] should have been brought before a U.S. Magistrate Judge for a probable cause determination, however, [Hazelwood's] case was not heard until December 7, 2020,[4] nearly three (3) weeks after his arrest." *Id.* at 5. Hazelwood faults Magistrate Judge John Doe for failing to have Hazelwood's case placed on the Court's docket to be heard within the 48 hours provided for arrests without a warrant. *Id.*[5]

Based upon these events, Hazelwood's complaint sues Lebanon Police Sergeant Henry Keene, United States Marshal Parker, and United States Magistrate Judge "John Doe" for violations of Fourth and Eighth Amendments rights. *Id.* at 5. As relief, he seeks punitive damages. *Id.* at 10. However, Hazelwood's complaint will be dismissed upon initial screening for failure to state a claim for which relief may be granted.

---

[3] On January 4, 2023 (after the state charges had been dismissed), Judge Caldwell held a final revocation hearing. *Id.* at R. 171 (Minute Entry). At the hearing, the United States Probation Officer advised that Hazelwood had been fully compliant with all terms and conditions of supervision, thus the Court Ordered that he remain on all terms and conditions of his supervised release and lifted a previously imposed curfew requirement. *Id.*

[4] In a Memorandum submitted by Hazelwood in further support of his complaint, Hazelwood states that he appeared before the Magistrate Judge on December 5, 2020. [R 8 at 3.] However, as noted herein, according to the docket, Hazelwood's initial appearance on violations 1 and 2 was on December 3, 2020. *United States v. Hazelwood*, 5:02-cr-143-KKC-MAS (E.D. Ky. 2003) at R. 137. Moreover, Hazelwood waived his right to a preliminary hearing on violations 1 and 2. *Id.*

[5] *See Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) ("If officers have arrested an individual without a warrant, they generally must take the individual before a magistrate within 48 hours.") (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)).

As an initial matter, despite Hazelwood's reference to the Eighth Amendment, he does not allege any facts at all that suggest a violation of his rights to be free from "cruel and unusual" punishment as guaranteed by the Eighth Amendment. Rather, his claims relate to his allegations that he was arrested and detained without a warrant and was not promptly presented to a neutral decisionmaker for a probable cause determination within 48 hours. These claims sound in the Fourth, not the Eighth, Amendment. The Supreme Court has expressly held that where a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.").

Moreover, Hazelwood's claims against "Magistrate Judge John Doe" based upon his allegations that he was not promptly scheduled for a detention hearing are barred by judicial immunity. Hazelwood's claim against "Judge Doe" (which appears to be Judge Stinnett) is based upon his allegation that "U.S. Magistrate Judge John Doe failed to have Plaintiff's case placed on the court's docket to be heard within the 48 hours provided for arrests without a warrant." [R. 1 at 5.] As discussed herein, Hazelwood's arrest was not without a warrant but was, in fact, made pursuant to the warrant that was issued on November 18. Moreover, Hazelwood waived his right to a preliminary hearing at his December 3 initial appearance on violations 1 and 2. *United States v. Hazelwood*, 5:02-cr-143-KKC-MAS (E.D. Ky. 2003) at R. 137 (Minute Entry). Finally, to the extent that Hazelwood complains about the timing of his detention hearing, Judge Stinnett deferred consideration of the issue of Hazelwood's detention

pursuant to a request made by Hazelwood's own counsel in order to give counsel an opportunity to investigate the state charges that were pending against Hazelwood.  *Id*.

Regardless, judges have long been entitled to absolute judicial immunity from claims arising out of their performance of functions integral to the judicial process, *Pierson v. Ray*, 386 U.S. 547, 553-55 (1967).  As explained by the United States Supreme Court, "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction," and this "settled principle of law" was not abolished by § 1983.  *Id*. at 554.  "Judicial immunity is an immunity from suit, not just from ultimate assessment of damages," and, accordingly, is "not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."  *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted).

Without question, scheduling of Hazelwood's detention hearing falls squarely within Judge Stinnett's role as a United States Magistrate Judge.  *See Huffer v. Bogen*, 503 F. App'x 455, 459 (6th Cir. 2012) ("[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity.") (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  Thus, Hazelwood's claims against Judge Stinnett based upon the timing of his detention hearing are barred by judicial immunity.

Hazelwood's remaining claims against Deputy Parker and Sgt. Keene are based upon his allegations that he was arrested and detained "without a warrant" on November 18, 2020. However, Hazelwood was not arrested without a warrant.  Rather, Hazelwood was arrested pursuant to the warrant that was ordered to be issued by Judge Caldwell on November 18.

*United States v. Hazelwood*, 5:02-cr-143-KKC-MAS (E.D. Ky. 2003) at R. 134, 135.  While

Hazelwood's complaint is afforded liberal construction, this does not mean that the Court must

accept as true conclusory allegations (such as that Hazelwood was arrested without a warrant)

that are directly contradicted by the record in Hazelwood's criminal case.  *See Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989) ("[Section] 1915(d)'s term 'frivolous,' when applied to a

complaint, embraces not only inarguable legal conclusions, but also the fanciful factual

allegation.").  *See also Moderwell*, 997 F.3d at 659.

A constitutional false arrest claim, such as Hazelwood's claims against Deputy Parker

and Sgt. Keene, "requires a plaintiff to prove that the arresting officer lacked probable cause to

arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v.*

*Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).  However, "[i]f the arrest is made

pursuant to a facially valid warrant, liability is proper only if the defendant 'knowingly and

deliberately, or with a reckless disregard for the truth, made false statements or omissions that

created a falsehood' and 'such statements or omissions were material, or necessary, to the

finding of probable cause.'" *Hart v. Hillsdale Cnty., Michigan*, 973 F.3d 627, 635-36 (6th Cir.

2020) (quoting *Sykes* at 677) (other citations omitted).

Hazelwood does not allege that either Parker or Keene made false statements or

omissions in the application for the warrant that were material or necessary to the finding of

probable cause.  Nor does Hazelwood otherwise attack the validity of the warrant issued on

November 18.  Rather, Hazelwood appears to be proceeding under the theory that, although a

warrant had been issued on November 18, because a copy of the warrant was not forwarded to

the Lebanon Police Department until November 19, his arrest on November 18 based upon the

notification from the U.S. Marshals Service was "warrantless," thus he was required to be

brought before a "neutral decisionmaker" within 48 hours for a probable cause determination. However, it has long been held that "[t]he fact that the officers did not have physical possession of the warrant at the time of the arrest is of no consequence to the validity of the arrest." *United States v. Holland*, 438 F.2d 887, 888 (6th Cir. 1971) (citing Fed. R. Crim P. 4(c)(3)) (other citation omitted).

Indeed, with respect to the manner of execution of a warrant, the Federal Rules of Criminal Procedure do not require that the officer executing the arrest have the warrant in hand at the time of the arrest. To the contrary, the language of Rule 4(c)(3)(A) governing the manner of executing a warrant specifically contemplates that the officer might *not* have a copy of the warrant in his or hands at the time of the arrest. Specifically, Rule 4(c)(3)(A) states:

> A warrant is executed by arresting the defendant. Upon arrest, an officer possessing the original or a duplicate original warrant must show it to the defendant. *If the officer does not possess the warrant*, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the original or a duplicate original warrant to the defendant *as soon as possible*.

Fed. R. Crim. P. 4(c)(3)(A) (emphasis added). Nor do the Kentucky Rules of Criminal Procedure require that an officer have the warrant in his or her possession at the time of the arrest. *See* Ky. RCr 2.1(1) ("A warrant of arrest may be executed by any peace officer. *The officer need not have the warrant in his or her possession at the time of arrest.* In any event, the officer shall inform the defendant of the offense charged and the fact that a warrant has been issued.") (emphasis added).

As explained by the Advisory Committee Notes to Federal Rule 4(c)(3):

> The provision that the arresting officer need not have the warrant in his possession at the time of the arrest is rendered necessary by the fact that a fugitive may be discovered and apprehended by any one of many officers. It is obviously impossible for a warrant to be in the possession of every officer who is searching for a fugitive or who unexpectedly might find himself in a position to apprehend

the fugitive.  The rule sets forth the customary practice in such matters, which has the sanction of the courts.  "It would be a strong proposition in an ordinary felony case to say that a fugitive from justice for whom a capias or warrant was outstanding could not be apprehended until the apprehending officer had physical possession of the capias or the warrant.  If such were the law, criminals could circulate freely from one end of the land to the other, because they could always keep ahead of an officer with the warrant." *In re Kosopud,* N.D.Ohio, 272 F. 330, 336. Waite, 27 Jour. of Am.Judicature Soc. 101, 103. The rule, however, safeguards the defendant's rights in such case.

Fed. R. Crim. P. 4, Advisory Committee Notes (1944 Adoption).

Hazelwood does not allege that he was not advised that the warrant existed, nor that he was not informed of the offenses charged.  The fact that a copy of the warrant was not forwarded to the Lebanon Police Department until November 19 (the day after his arrest) is irrelevant to the validity of his arrest pursuant to the warrant on November 18, nor does it convert that arrest into a "warrantless" arrest.  For all of these reasons, Hazelwood fails to state a claim for which relief may be granted against either Deputy Parker or Sgt. Keene related to his November 18 arrest and subsequent detention.

While the Court construes *pro se* pleadings with some leniency, it cannot create claims or allegations that the plaintiff has not made.  *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.").  Hazelwood's failure to adequately allege a claim for relief does not gives this Court license to create these allegations on his behalf.  *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[L]iberal construction does not require a court to conjure allegations on a litigant's behalf." ) (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).  For all of these reasons, Hazelwood's complaint will be dismissed on initial screening for failure to state a claim for which relief may be granted.

Accordingly, it is hereby **ORDERED** as follows:

1.     Hazelwood's Complaint [R. 1] is **DISMISSED** for failure to state a claim

     for which relief may be granted;

2.     All pending request for relief are **DENIED** as moot;

3.     This matter is **DISMISSED** and **STRICKEN** from the Court's docket;

     and

4.     Judgment shall be entered contemporaneously herewith.


This the 15th day of September, 2023.


Gregory F. Van Tatenhove
United States District Judge

12